IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
CEDAR RAPIDS DIVISION

DION CLAYBORN,

    Petitioner,

vs.

UNITED STATES OF AMERICA,

    Respondent.

No. C20-48-LTS
(Crim. No. CR18-51-LTS)
(MJ No. 18-MJ-148-CJW)

MEMORANDUM
OPINION AND ORDER

## I.    INTRODUCTION

This matter is before me on Dion Clayborn's motion (Doc. 1) to vacate, set aside or correct his sentence pursuant to 28 U.S.C. § 2255. Clayborn alleges he is entitled to relief because he received ineffective assistance of counsel. On initial review (Doc. 3), I found that this case should proceed. Clayborn's trial counsel filed an affidavit (Doc. 4) and the Government filed a resistance (Doc. 7). Clayborn then filed a motion (Doc. 14) to add supplemental claim.[1] I find that an evidentiary hearing is not required.

## II.    BACKGROUND

On April 27, 2018, the Government filed a complaint (MJ Doc. 2) charging Clayborn with one count of possession of a controlled substance with the intent to distribute in violation of 21 U.S.C. § 841(a)(1). The court appointed attorney Mark Meyer to represent Clayborn. MJ Doc. 6.

---

[1] This supplemental claim is based on the affidavit submitted by Clayborn's trial counsel, Mark Meyer. Clayborn argues counsel failed to argue that his Iowa conviction was not a career offender predicate offense. *See* Doc. 14 at 2-4 (while Clayborn references his Illinois conviction in the heading, the substance of his argument focuses on his Iowa conviction). For the reasons explained herein, this claim fails on the same basis related to his Illinois conviction.

On May 23, 2018, the grand jury returned an indictment (Crim. Doc. 2) charging Clayborn with possession with intent to distribute a controlled substance near a protected location in violation of 21 U.S.C. §§ 841(a)(1) and 860. On June 19, 2018, Clayborn pleaded guilty to that charge. Crim. Doc. 10. He faced a mandatory minimum prison sentence of one year, with a maximum of 40 years.

On September 19, 2018, the parties entered into a written sentencing agreement and agreed to a base offense level of at least 24 based on Clayborn's involvement with at least 221.8 grams of heroin. They also agreed on a protected location enhancement, a role enhancement and a reduction for acceptance of responsibility. In addition, the parties agreed that a sentence of at least 120 months' imprisonment was appropriate. Pursuant to the agreement, the Government agreed not to charge Clayborn with conspiracy. Clayborn also retained the ability to challenge his career offender status.

At the sentencing hearing on January 25, 2019, I found that Clayborn qualified as a career offender under United States Sentencing Guidelines (U.S.S.G.) § 4B1.2(a) based on two previous felony drug convictions. Crim. Doc. 18 at 15, 17. The career offender enhancement raised Clayborn's adjusted offense level from 30 to 34, resulting in a total offense level of 31 instead of 27. Crim. Doc. 18 at 12-13. The enhancement also raised his criminal history category from V to VI. *Id*. at 18. Thus, as a result of the career offender enhancement, Clayborn's advisory sentencing guidelines range was 188 to 235 months. Without the enhancement, his range would have been 120 to 150 months.

Clayborn's counsel objected to a 1998 Illinois drug conviction[2] as a career offender predicate offense. Crim. Doc. 18 at 15. He did not object to a 2012 Iowa drug conviction[3] as a career offender predicate offense. *Id.* at 17. Counsel also made a motion for downward variance based on several factors, including the harshness of the career

---

[2] Clayborn was convicted of a violation of Chapter 720 Illinois Compiled Statutes (ILCS) 570/407(b)(2).

[3] Clayborn was convicted under Iowa Code § 124.401(1)(d).

2

offender application in this case. Crim. Doc. 22. I found that Clayborn qualified as a career offender, but granted his motion for downward variance on grounds that the career offender enhancement in this case was excessive. Crim. Doc. 34 at 63-64. I imposed a sentence of 144 months' imprisonment.

The judgment (Crim. Doc. 27) was filed on January 28, 2019. Clayborn filed a notice of appeal to the Eighth Circuit Court of Appeals on February 7, 2019, arguing that his Iowa and Illinois drug convictions could not count as career offender predicates. Crim. Doc. 29. The Eighth Circuit disagreed and affirmed Clayborn's sentence. Crim. Doc. 40 at 1-5. Clayborn filed a petition for writ of certiorari with the United States Supreme Court, which was denied. Crim. Docs. 43, 44. The court received Clayborn's § 2255 motion on April 27, 2020, approximately three months before he filed the petition for writ of certiorari.

### III. LEGAL STANDARD

A prisoner in custody under sentence of a federal court may move the sentencing court to vacate, set aside or correct a sentence. *See* 28 U.S.C. § 2255(a). To obtain relief, a federal prisoner must establish:

> [T]hat the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or [that the judgment or sentence] is otherwise subject to collateral attack.

*Id.*; *see also* Rule 1 of the Rules Governing § 2255 Proceedings (specifying scope of § 2255). If any of the four grounds are established, the court is required to "vacate and set the judgment aside and [to] discharge the prisoner or resentence him or grant a new trial or correct the sentence as may appear appropriate." 28 U.S.C. § 2255(b).

When enacting § 2255, Congress "intended to afford federal prisoners a remedy identical in scope to federal habeas corpus." *Sun Bear v. United States*, 644 F.3d 700,

3

Case 1:20-cv-00048-LTS-MAR    Document 16    Filed 07/14/23    Page 3 of 15

704 (8th Cir. 2011) (en banc) (citation omitted). Section 2255 does not provide a remedy for "all claimed errors in conviction and sentencing." *Id.* (citation omitted). Rather:

> Relief under [§ 2255] is reserved for transgressions of constitutional rights and for a narrow range of injuries that could not have been raised on direct appeal and, if uncorrected, would result in a complete miscarriage of justice.

*United States v. Apfel*, 97 F.3d 1074, 1076 (8th Cir. 1996) (citation omitted); *see also Sun Bear*, 644 F.3d at 704 ("[T]he permissible scope of a § 2255 collateral attack . . . is severely limited[.]"). A collateral challenge under § 2255 is not interchangeable or substitutable for a direct appeal. *See United States v. Frady*, 456 U.S. 152, 165 (1982) ("[W]e have long and consistently affirmed that a collateral challenge may not do service for an appeal."). Consequently, "an error that may justify reversal on direct appeal will not necessarily support a collateral attack on a final judgment." *Id.* (citation omitted).

"Evidentiary hearings on [§ 2255] motions are preferred, and the general rule is that a hearing is necessary prior to the motion's disposition *if a factual dispute exists*." *Thomas v. United States*, 737 F.3d 1202, 1206 (8th Cir. 2013) (emphasis added). "The district court is not permitted to make a credibility determination on the affidavits alone." *Id.* at 1206; *see also United States v. Sellner*, 773 F.3d 927, 930 (8th Cir. 2014) ("[The] district court abused its discretion when it credited the attorney's affidavit over the petitioners without first holding an evidentiary hearing."). However, no hearing is required "where the claim is inadequate on its face or if the record affirmatively refutes the factual assertions upon which it is based." *See New v. United States*, 652 F.3d 949, 954 (8th Cir. 2011) (citation omitted).

## IV. DISCUSSION

Clayborn argues he received ineffective assistance of counsel because Meyer failed to: (1) challenge his career offender classification on the basis that his Illinois conviction cannot count as a predicate offense because it is categorically overbroad, (2) argue that 21 U.S.C. § 841(a)(1) requires the Government to show that he "knowingly or

4

intentionally" performed every element of the crime and (3) adequately counsel him about the impact of his sentencing agreement. I will discuss each ground in turn.

### A. *Ineffective Assistance of Counsel Standards*

To establish a claim for ineffective assistance of counsel, a movant must prove that his attorney's representation "was 'deficient' and that the 'deficient performance prejudiced the defense.'" *Walking Eagle v. United States*, 742 F.3d 1079, 1082 (8th Cir. 2014) (quoting *Strickland v. Washington*, 466 U.S. 668, 687 (1984)). Deficient performance is performance that falls "below an objective standard of reasonableness," *Lafler v. Cooper*, 566 U.S. 158, 163 (2012) (citation omitted), meaning conduct that fails to conform to the degree of skill, care and diligence of a reasonably competent attorney. *Strickland*, 466 U.S. at 687. Matters of trial strategy are generally entrusted to the professional discretion of counsel and they are "virtually unchallengeable" in § 2255 proceedings. *Loefer v. United States*, 604 F.3d 1028, 1030 (8th Cir. 2010). Counsel is not constitutionally ineffective because of the failure to raise a "relatively sophisticated" and "counter-intuitive argument." *Donnell v. United States*, 765 F.3d 817, 821 (8th Cir. 2014). However, "[s]trategy resulting from lack of diligence in preparation and investigation is not protected by the presumption in favor of counsel." *Holder v. United States*, 721 F.3d 979, 994 (8th Cir. 2013) (citation omitted).

To establish prejudice, a movant must "show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Lafler*, 566 U.S. at 163 (citation omitted). "Reasonable probability" means "a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694. That requires a "substantial," not just "conceivable," likelihood of a different result. *Harrington v. Richter*, 562 U.S. 86, 112 (2011). Ultimately, a showing of prejudice requires counsel's errors to be "so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Id.* at 104 (citation omitted).

5

Because a movant must show both deficient performance and prejudicial effect, a court reviewing ineffective assistance claims need only address one prong if either fails. *See Williams v. United States*, 452 F.3d 1009, 1014 (8th Cir. 2006). Additionally, each individual claim of ineffective assistance "must rise or fall on its own merits," meaning that courts should not take into account the "cumulative effect of trial counsel's errors in determining Strickland prejudice." *Middleton v. Roper*, 455 F.3d 838, 851 (8th Cir. 2006); *United States v. Brown*, 528 F.3d 1030, 1034 (8th Cir. 2008) ("[W]e have repeatedly rejected the cumulative error theory of post-conviction relief.").

### B. *Clayborn's Claims*
#### 1. *Career Offender Classification*

Clayborn argues his offense of conviction in Illinois is overly broad and thus is not a "controlled substance offense" as defined by U.S.S.G. § 4B1.1(b). He notes that federal law criminalizes optical and geometric isomers of cocaine, while the Illinois statute covers optical, geometric and positional isomers, making it broader than the Controlled Substances Act (CSA). *See* 21 U.S.C. §§ 802(14), 812.[4]

The substance at issue in Clayborn's Illinois case was crack cocaine, but he notes the statute made no distinction and thus, the Government was not required to prove what form of cocaine was involved. Under *Mathis v. United States*, 136 S. Ct. 2243, 2248 (2016), a list of disjunctive substances specifies a diverse means of satisfying a single element of a crime and does not create a separate crime for each means by which the element could be satisfied. Because the three different types of isomers are alternative means of committing a single offense, and not alternative elements of committing several offenses under Illinois law, and because a positional isomer of cocaine is not a controlled

---

[4] Clayborn makes a similar argument in his supplemental claim with regard to his Iowa conviction. He argues that counsel should have challenged that conviction (which involved marijuana) with an argument that the Iowa statute defined marijuana more broadly than the federal definition of marijuana in the Farm Bill of 2018, which excluded hemp.

6

substance under the CSA or § 4B1.2(b)'s definition, he argues the Illinois statute cannot serve as a career offender predicate. Clayborn argues Meyer was deficient for failing to meaningfully object to the Government's use of the Illinois conviction as a career offender predicate and that he was prejudiced because without the career offender enhancement, he would have received a lower sentence.

The Government notes that Clayborn's argument is similar to the one in *United States v. Ruth*, 966 F.3d 642 (7th Cir. 2020), in which the Seventh Circuit held that for purposes of an enhancement for a prior felony drug offense under 21 U.S.C. § 851, the Illinois offense of possession with intent to distribute cocaine is overbroad because it includes "positional isomers" in the definition of cocaine, whereas the federal definition did not. However, the court rejected the same argument for purposes of a "controlled substance offense" in the career offender guideline. *Id.* at 651-54. The Government also argues that Meyer challenged the career offender designation and his representation did not fall outside the wide range of reasonable professional assistance. It further contends that Clayborn cannot demonstrate prejudice because the court already varied significantly downward from the career offender guideline range and the record does not demonstrate that he would have received a lesser sentence had he not been categorized as a career offender.

As noted above, Meyer did object to the Illinois conviction serving as a career offender predicate. Crim. Doc. 16. While he did not object on the basis that Clayborn now identifies, he stated:

> Regarding the offense-level determination, Defendant's primary objection is that the conviction noted in paragraph 39 is identified as a career offender predicate. The offense level for Mr. Clayborn as a career offender (level 34) is substantially higher than his offense level would otherwise be (level 27). The conviction identified in paragraph 39 is for an offense that occurred more than 20 years ago, and Mr. Clayborn does not agree or concede that the records relating to the conviction are sufficient to establish when he completed his boot camp sentence or that he was sentenced for this offense to prison in 2000 after serving a term in boot camp. The sentence imposed in 2000 could have been for the offense identified in paragraph 40,

7

> which … lists identical dates for imposition of a prison sentence and subsequent parole and release.

Crim. Doc. 16 at 1. Meyer also made arguments concerning this conviction at sentencing. I concluded that the Illinois statute of conviction categorically fell within the definition of a controlled substance offense and was within the 15-year period to qualify as a career offender predicate. Crim. Doc. 34 at 41. I granted a downward variance, however, based on a finding that the career offender enhancement was excessive in this case. I noted that the Illinois offense was for 0.4 grams of crack cocaine and the Iowa offense was for delivery of a controlled substance (marijuana), for which Clayborn received a suspended sentence. While both offenses technically qualified, I found them to be minor offenses in the grand scheme of career offender predicates. *Id.* at 64.

In *Ruth*, the defendant argued that his Illinois conviction for possession with intent to deliver cocaine was not a "controlled substance offense" under U.S.S.G. §§ 4B.1(a) and 4B1.2(b) because the Illinois statute, 720 ILCS 570/401(c)(2), is categorically broader than federal law and thus could not serve as a predicate felony controlled substance offense. The defendant did not object to the § 851 sentencing enhancement based on the same Illinois conviction. *Ruth*, 966 F.3d at 644-45. On appeal, the Seventh Circuit considered whether the Illinois statute was categorically broader than federal law with regard to both the career offender guideline and the § 851 enhancement. *Id.* at 645. Based on the overbreadth issue, the Seventh Circuit agreed that he was entitled to be resentenced without the § 851 enhancement. However, it rejected this argument as to the career offender enhancement. *Id.* at 645.

The court noted that under U.S.S.G. § 4B1.1(a), a defendant is a career offender if "the defendant has at least two prior felony convictions of either a crime of violence or a controlled substance offense." *Id.* at 651. Because the Guidelines do not further define "controlled substance," Ruth relied on the CSA's definition, under which the Illinois statute covering positional isomers of cocaine is broader than the federal definition of cocaine. The court concluded there was no compelling reason to incorporate the CSA's

definition into the Guidelines. *Id.* at 652. The Seventh Circuit acknowledged the circuit split on this issue, noting that the Second, Fifth, Eighth[5] and Ninth Circuits previously concluded that "controlled substance" in U.S.S.G. § 4B1.2(b) refers to the federal definition. *Id.* at 653. The court noted that under its own precedent, the career offender guideline defines the term controlled substance offense broadly and, therefore, the definition is most plainly read to "include state-law offenses related to controlled or counterfeit substances punishable by imprisonment for a term exceeding one year." *Id.* at 654 (quoting *United States v. Hudson*, 618 F.3d 700, 703 (7th Cir. 2010)). Based on the "natural meaning" of a controlled substance, it concluded that Ruth's cocaine-related conviction under Illinois law was a controlled substance offense under the career offender guideline. *Id.*

The Eighth Circuit examined *Ruth* in *United States v. Henderson*, 11 F.4th 713 (8th Cir. 2021), which involved an enhancement under U.S.S.G. § 2K2.1 (providing for a base level of 24 "if the defendant committed any part of the instant offense subsequent to sustaining two felony convictions of either a crime of violence or a controlled substance offense"). It noted that under § 4B1.2(b), a "controlled substance offense" is defined as "an offense under federal or state law . . . ." *Henderson*, 11 F.4th at 718. The court clarified that in *Sanchez-Garcia*, it did not hold that a state law crime must involve a substance under the CSA to be a "controlled substance offense" under the career offender guideline, but simply affirmed the career offender enhancement without addressing the question. *Id.* The Eighth Circuit expressed agreement with *Ruth* and similar cases holding that the career offender guideline defines "controlled substance offense" broadly to include state-law offenses related to controlled or counterfeit substances that are punishable by more than one year imprisonment. *Id.* ("There is no requirement that the particular substance underlying the state offense is also controlled under a distinct federal law."). Like the Seventh Circuit, it found no good reason to incorporate the CSA and

---

[5] *See United States v. Sanchez-Garcia*, 642 F.3d 658, 661 (8th Cir. 2011).

concluded that doing so would "defeat the Sentencing Commission's obvious intent, consistent with its statutory mandate under 28 U.S.C. § 994(i)(1), to include prior convictions for controlled substance offenses "under . . . state law." *Id.* at 719.

The Eighth Circuit subsequently relied on *Henderson* to affirm the application of the career offender enhancement under U.S.S.G. § 4B1.1. *See United States v. Webb*, No. 21-3830, 2023 WL 3940539, at *5 (8th Cir. June 12, 2023). It has also considered *Henderson* with regard to Iowa's definition of marijuana and concluded that the hemp-inclusive version of Iowa Code § 124.401(1)(d) categorically qualified as a controlled substance offense for the career offender enhancement. *See United States v. Bailey*, 37 F.4th 467, 469-70 (8th Cir. 2022). Of course, the issue in this case is whether Clayborn's counsel was ineffective for failing to challenge the career offender enhancement based on overbreadth of the Illinois and Iowa statutes. At the time Clayborn was sentenced, *Sanchez-Garcia* perhaps could have supported the argument for which Clayborn now advocates. However, as pointed out by recent Eighth Circuit cases, it did not affirmatively state that the CSA definition should be used to define "controlled substance offense" under the guidelines, but rather affirmed the enhancement without addressing the issue.

Meyer was not required to make an objection that lacked legal support. *See Jackson v. United States*, 956 F.3d 1001, 1009 (8th Cir. 2020); *Kelly v. United States*, 819 F.3d 1044, 1050 (8th Cir. 2016) ("Given the absence of a clearly controlling precedent requiring a different course of action, and in light of the substantial deference we afford trial counsel, we conclude that Kelly's counsel's performance at sentencing was objectively reasonable."); *Toledo*, 581 F.3d at 680-81 (counsel acted reasonably by withdrawing an objection to the defendant's armed career criminal status because the objection had no basis in the law at the time, though the law subsequently changed). Nonetheless, Meyer did object to the career offender enhancement on other grounds. I granted a downward variance for the reasons Meyer advanced, which led to a sentence that was within the guidelines range had the career offender enhancement not applied.

10

Thus, Clayborn cannot demonstrate deficient performance nor prejudice. This claim of ineffective assistance of counsel fails.

### 2. *Rehaif* Claim

Clayborn's second ineffective assistance of counsel claim is based on counsel's failure to argue that the Government was required to prove Clayborn's knowledge as to each element of his offense. This argument is based on *Rehaif v. United States*, 139 S. Ct. 2191 (2019). He argues that like the statutes in that case (18 U.S.C. §§ 922(g) and 924(a)(2)), the statute he was charged under (21 U.S.C. § 841(a)) similarly contains the word "knowingly" before the prohibited acts. Therefore, he argues the Government was required to prove that he knowingly possessed a controlled substance, he knowingly intended to distribute it and that he knew it was a controlled substance. He argues that the indictment failed to include the express scienter element required by *Rehaif* and therefore, his guilty plea was not made intelligently, knowingly or voluntarily. Clayborn asserts that his conviction is not authorized by law because he pleaded guilty to elements that do not amount to a crime.

The Government argues that *Rehaif* has no applicability to the offense of conviction and that Clayborn has failed to demonstrate that he did not enter a valid guilty plea. It notes that the elements of possession with intent to distribute a controlled substance near a protected location have been long-established and that the indictment and his guilty plea reflect allegations and admissions of these elements.

Clayborn's claim fails for two reasons. First, *Rehaif* involved the offense of possession of a firearm by a prohibited person under 18 U.S.C. §§ 922(g) and 924(a)(2). *Rehaif v. United States*, 319 S. Ct. 2191 (2019). Section 924(a)(2) provides that anyone who "knowingly violates" § 922(g) shall be fined or imprisoned for up to 10 years. The Court held that for prosecutions under §§ 922(g) and 924(a)(2), the Government must prove that the defendant knew he possessed a firearm and also that he knew he had the

relevant status when he possessed it. *Id.* at 2194. I am aware of no case in which a court has extended the *Rehaif* holding to a violation of § 841(a).

Second, *Rehaif* was decided on June 21, 2019, nearly five months after Clayborn was sentenced on January 25, 2019. *See Ragland v. United States*, 756 F.3d 597, 601 (8th Cir. 2014) (no ineffective assistance of counsel based on counsel's failure "to anticipate a change in law" or decision not to raise an issue unsupported by then-existing precedent). Because there was no legal support for the argument that Clayborn contends his attorney should have made (and there continues to be no legal basis for such an argument), there was no deficient performance. This claim of ineffective assistance of counsel fails.

### 3. *Sentencing Agreement*

Clayborn's final argument is that counsel did not advise him of the full impact of his sentencing agreement. He asserts he did not understand that the agreement was the sole basis on which the Government could seek the career offender enhancement because it included relevant conduct dating back to 2014. He claims he thought the purpose of the agreement was only to specify the drug quantity.

The Government explains that the drug quantity agreement was based on discovery evidence that Clayborn began selling heroin in the Northern District of Iowa in late 2014. The Government intended to prove Clayborn was responsible for over 500 grams of heroin and 32 grams of fentanyl as relevant conduct. Rather than contesting the Government's evidence on this point, Clayborn entered into a sentencing agreement. In that agreement, he affirmed that he had read each provision, understood them and was freely and voluntarily entering into the agreement. At sentencing, I asked Clayborn if he wished to proceed pursuant to the sentencing agreement or instead wanted a contested hearing. He indicated he wished to stick with the sentencing agreement. The Government notes that it was not the sentencing agreement that caused him to be a career offender, but the information in the Government's discovery file, which Clayborn

affirmed was accurate. Also, he could have lost the acceptance of responsibility reduction and been subject to an obstruction of justice enhancement in the absence of an agreement. Thus, the Government argues Clayborn has shown neither deficient performance nor prejudice.

Meyer explains that Clayborn entered into a sentencing agreement in lieu of being charged with conspiracy to distribute heroin. Doc. 4 at 2. He agreed he would not seek a sentence less than 10 years in prison but could challenge his career offender status. The presentence investigation report (PSR) found that Clayborn was a career offender based on his Illinois and Iowa drug convictions. *Id.* at 3. Clayborn challenged the application of a career offender enhancement. *Id.* Meyer states the sentencing agreement did not subject Clayborn to career offender status because it was based on facts and information the Government would have otherwise presented as relevant conduct at the sentencing hearing. *Id.* at 7. He notes the standard of proof would have been preponderance of the evidence and contesting those facts could have had adverse consequences such as losing the acceptance of responsibility reduction or the application of an obstruction of justice enhancement. *Id.*

Clayborn's main concern is that the sentencing agreement established a time frame for relevant conduct that allowed for a prior conviction to count as a career offender predicate. As noted by both Meyer and the Government, failure to stipulate to the relevant conduct could have resulted in negative consequences including the loss of the acceptance of responsibility reduction and/or an additional enhancement for obstruction of justice. Additionally, the absence of a stipulation would not have meant that Clayborn's prior convictions would not have served as career offender predicates. Rather, the Government would have been required to prove the relevant conduct at the sentencing hearing by calling witnesses or offering other evidence. Given the preponderance of the evidence standard, this would not have been difficult.

Ultimately, the relevant question is whether counsel's assistance fell below an objective standard of reasonableness. Even if Meyer failed to explain to Clayborn that

13

the sentencing agreement provided a time frame from which the Government could establish career offender predicates, this did not amount to deficient performance. The Government could have established this information through other means. In addition, the benefits of stipulating to those facts likely outweighed any disadvantages, and Clayborn retained the right to contest his status as a career offender. This ineffective assistance of counsel claim fails.

## V. CERTIFICATE OF APPEALABILITY

In a § 2255 proceeding before a district judge, the final order is subject to review by the court of appeals for the circuit in which the proceeding is held. 28 U.S.C. § 2253(a). However, unless a circuit judge issues a certificate of appealability, an appeal may not be taken to the court of appeals. § 2253(c)(1)(A). A district court possesses the authority to issue certificates of appealability under § 2253(c) and Federal Rule of Appellate Procedure 22(b). *See Tiedeman v. Benson*, 122 F.3d 518, 522 (8th Cir. 1997). Under § 2253(c)(2), a certificate of appealability may issue only if a movant has made a substantial showing of the denial of a constitutional right. *See Miller-El v. Cockrell*, 537 U.S. 322, 335–36 (2003); *Tiedeman*, 122 F.3d at 523. To make such a showing, the issues must be debatable among reasonable jurists, a court could resolve the issues differently, or the issues deserve further proceedings. *See Miller-El*, 537 U.S. at 335–36 (reiterating standard).

Courts reject constitutional claims either on the merits or on procedural grounds. "'[W]here a district court has rejected the constitutional claims on the merits, the showing required to satisfy § 2253(c) is straightforward: [t]he [movant] must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong.'" *Miller-El*, 537 U.S. at 338 (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)). When a motion is dismissed on procedural grounds without reaching the underlying constitutional claim, "the [movant must show], at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a

14

constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Slack*, 529 U.S. at 484.

Having thoroughly reviewed the record in this case, I find that Clayborn failed to make the requisite "substantial showing" with respect to any of the claims raised in his § 2255 motion. *See* 28 U.S.C. § 2253(c)(2); Fed. R. App. P. 22(b). Thus, a certificate of appealability will not issue. If he desires further review of his § 2255 motion, Clayborn may request issuance of the certificate of appealability by a judge of the Eighth Circuit Court of Appeals in accordance with *Tiedeman*, 122 F.3d at 520–22.

## VI. CONCLUSION

For the reasons stated herein, Clayborn's motion (Doc. 14) to add a supplemental claim is **granted**. However, his motion (Doc. 1) for relief under 28 U.S.C. § 2255 is **denied** as to all claims, including the supplemental claim, and this action is **dismissed with prejudice**. A certificate of appealability shall not issue.

**IT IS SO ORDERED.**

**DATED** this 14th day of July, 2023.

_____
Leonard T. Strand, Chief Judge